IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| JULIE H.[1], | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 1:22-CV-00145-H-BU |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| | § | |
| | § | |
| Defendant. | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff Julie H. seeks judicial review of a final adverse decision of the Commissioner of Social Security (the Commissioner) under 42 U.S.C. § 405(g). Dkt. No. 1. Under Special Order No. 3-251 of this Court, this case was automatically referred for the determination of non-dispositive motions and the issuance of findings, conclusions, and recommendation of dispositive matters. *See* Dkt. No. 4. The parties have not consented to proceed before a magistrate judge. For the reasons explained below, the undersigned recommends that the Court affirm the Commissioner's decision.

I.   BACKGROUND

Plaintiff alleges a disability that began on June 16, 2020. Administrative Record, Dkt. No. 10-1 (Tr.) at 18. After her application for disability insurance benefits under Title II of the Social Security Act was denied initially and on reconsideration, Plaintiff

---

[1] Due to concerns regarding the privacy of sensitive personal information available to the public through opinions in Social Security cases, Plaintiff is identified only by first name and last initial.

challenged the denial and requested a hearing before an Administrative Law Judge (ALJ). Tr. at 18. The ALJ held a hearing on December 6, 2021, where Plaintiff appeared with a non-attorney representative. Tr. at 35.

Plaintiff was born on July 4, 1957. Tr. at 180. She completed high school and took some college courses but did not complete the program. Tr. at 39. Prior to the onset of her alleged disability, Plaintiff worked as a payroll and human resources clerk. Tr. at 40–46.

The ALJ determined that Plaintiff was not disabled and therefore not entitled to disability benefits. Tr. at 28. At step one of the ALJ's analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her onset date of June 16, 2020. Tr. at 20. At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "degenerative disc disease of the lumbar spine with radiculopathy, obesity, major depressive disorder, post-traumatic stress disorder." Tr. at 20. At step three, the ALJ found that none of the Plaintiff's impairments or combination of impairments meet the severity requirements of a listed impairment listed in the Social Security regulations. Tr. at 21. Additionally, the ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform light work except she:

> can only stand and walk for three hours in an eight-hour day, can perform no climbing, can occasionally balance, stoop, kneel, crouch and crawl, and can maintain attention, concentration and pace to perform detailed, but not complex, tasks.

Tr. at 23.

At step four, the ALJ concluded that Plaintiff could perform past relevant work as payroll clerk and as a receptionist because "[t]his work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." Tr. at

27–28. As a result of Plaintiff being able to perform past work, the ALJ ultimately determined that, per the definition in the Social Security Act, Plaintiff was not disabled. Tr. at 28.

Plaintiff appealed the ALJ's findings to the Appeals Council, but the Council upheld the ALJ's decision. Tr. at 7. Plaintiff subsequently filed this action in federal district court.

## II. LEGAL STANDARDS

Judicial review of the Commissioner's decision to deny benefits is limited to determining whether that decision is supported by substantial evidence and whether the proper legal standards were applied to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

Substantial evidence means more than a scintilla, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). While a reviewing court must scrutinize the administrative record to ascertain whether substantial evidence supports the Commissioner's findings, it may not reweigh the evidence, try issues de novo, or substitute its own judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez v. Chater*, 64 F.3d 172, 173 (5th

Cir. 1995) (citing 42 U.S. § 405(g)). A reviewing court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

To be entitled to Social Security benefits, a claimant must show that she is disabled within the meaning of the Act. *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

In evaluating a disability claim, the Commissioner has promulgated a five-step sequential process to determine whether: (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in Appendix 1 of the Social Security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity. *See* 20 C.F.R. § 404.1520; *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007).

### III.    DISCUSSION

Plaintiff argues that the ALJ's decision was erroneous because: (1) the ALJ committed legal error in failing to either adopt the limitations found by the state agency consultants or explain her rejection of those limitations; (2) the ALJ's RFC failed to properly address Plaintiff's mental impairments and how they impact her ability to sustain work; and (3) the ALJ and appeals council judges had no legal authority to adjudicate this

4

case because they were not properly appointed. Dkt. No. 13 at 1. The undersigned takes each issue in turn.

A. <u>The ALJ properly considered the opinions of the state agency consultants.</u>

Plaintiff claims the ALJ committed legal error by finding the administrative opinions of the stage agency consultants persuasive without considering, discussing, or resolving an inconsistency in those opinions. Dkt. No. 13 at 3–6. Specifically, Plaintiff complains that the state agency consultants, in their administrative findings, have conflicting limitations in their PRT and MRFC explanations. *See id.* at 3–4. Additionally, Plaintiff argues that the ALJ committed legal error by relying on the state agency consultant opinions because the consultants "did not review all of the evidence available to them." *See id.* at 4–6.

1. *The ALJ was not required to explain an inconsistency in the administrative findings*.

Plaintiff argues that the ALJ committed legal error by finding the prior administrative opinions of state agency psychological consultants, Ben Kessler, Psy.D.,[2] and Julian Lev, Ph.D.,[3] "partially persuasive" without reconciling an inconsistency in the opinions. *See* Dkt. No. 13 at 3–6. Specifically, Plaintiff claims that the ALJ was required to explain why the consultants included a different limitation between the psychological review technique (PRT) and mental residual functional capacity (MRFC). *See id.*

---

[2] Ben Kessler, Psy.D., was the state agency psychological consultant for Plaintiff's disability determination explanation at the initial level. *See* Tr. at 53.
[3] Julian Lev, Ph.D., was the state agency psychological consultant for Plaintiff's disability determination explanation at the reconsideration level. *See* Tr. at 75.

The state agency consultants found that Plaintiff had mild limitations in: (1) understanding, remembering, and applying information; (2) interacting with others; (3) concentrating persisting and maintain pace; and (4) adapting or managing oneself. Tr. 62, 86. Additionally, Kessler opined in his PRT analysis at the initial level that Plaintiff's "cognitive abilities and functioning is consistent with limits to simple and routine tasks/instructions." Tr. at 63. However, Kessler also opined in his MRFC additional explanation that Plaintiff "can understand, remember, and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions, & respond appropriately to changes in routine work setting." Tr. at 70. Lev opined in his PRT analysis at the reconsideration level that "[i]nitial mental assessment remains current and is affirmed." Tr. at 86.

The ALJ considered the prior administrative findings of the state agency consultants. *See* Tr. at 27. The ALJ found the administrative findings "partially persuasive," but determined that Plaintiff was more limited in her ability to sustain concentration, persistence, and pace than the consultants. Tr. at 27. Accordingly, the ALJ only limited Plaintiff to performing detailed, but not complex tasks. Tr. at 23.

Plaintiff argues that the ALJ committed legal error when she "inexplicably" restricted Plaintiff to "'detailed, but not complex' work." Dkt. No. 13 at 3–4. Plaintiff asserts that this finding conflicts with the state agency consultant prior administrative findings, which the ALJ found partially persuasive, because Kessler and Lev restricted Plaintiff to simple and routine instruction in their PRT assessments. *Id.* at 4. The Commissioner responds to Plaintiff's argument by noting that the state agency consultants

actually restricted Plaintiff to detailed tasks in their MRFC assessment, and that it is the MRFC, not the PRT, that the ALJ considers. *See* Dkt. No. 16 at 10–12. In her Reply brief, Plaintiff claims that the ALJ "was absolutely required to resolve th[e] inconsistencies" between the state agency consultants PRT and MRFC. Dkt. No. 17 at 2.

Plaintiff's argument that the ALJ was required to resolve inconsistencies between the state agency consultants PRT and MRFC lacks merit.

The PRT is used to rate the severity of mental impairments at step 2 of a claimant's sequential evaluation process. *See Holmes v. Astrue*, No. 3:11-CV-2634-G BH, 2013 WL 638830, at *11 (N.D. Tex. Jan. 25, 2013) (citing 20 C.F.R. § 404.1520a), *report and rec. adopted*, 2013 WL 646510 (N.D. Tex. Feb. 20, 2013). In comparison, MRFC is used to steps 4 and 5 of the sequential evaluation process and "requires a more detailed assessment by itemizing various functions." *Martha L. v. Saul*, No. 1:20-CV-00003-H-BU, 2021 WL 3610316, at *4 (N.D. Tex. July 27, 2021), *report and rec. adopted*, 2021 WL 3604082 (N.D. Tex. Aug. 13, 2021). "Although the ALJ must consider the claimant's paragraph B functional limitations when determining mental RFC," the ALJ is not "required to incorporate them into [the] RFC assessment 'word-for-word.'" *Holmes*, 2013 WL 638830 at *13 (internal citations and quotations omitted).

Courts have held that an ALJ is not required to account for inconsistencies in state agency consultants PRT and MRFC limitations. *See, e.g.*, *Lull v. Colvin*, 535 F. App'x 683, 686 (10th Cir. 2013). In *Lull*, a medical source at the administrative level opined in the PRT section of the disability determination that the claimant's ability to maintain concentration, persistence, or pace was moderate. *Id.* at 685. In comparison, the MRFC

7

assessment, completed by the same medical source on the same day, opined that the claimant was not significantly limited in their ability to maintain attention and concentration. *Id.* at 685–86. Lull argued that "the ALJ erred in using the MRFCA because it was inconsistent with the PRT." *Id.* at 686. The Court held that Lull's argument was without merit because a PRT is used to assess the severity of impairments while a MRFC is more detailed and "relevant to the vocational determinations required at steps four and five." *Id.*

However, an ALJ's decision may lack substantial evidence when the ALJ expressly gives weight to the prior administrative findings in both the PRT and MRFC assessment, and the PRT and MRFC are inconsistent with each other. *Herd v. Comm'r of the Soc. Sec. Admin.*, No. 3:11-CV-2847-N, 2012 WL 4512494, at *11 (N.D. Tex. Aug. 27, 2012*)*, *report and rec. adopted sub nom. Herd v. Comm'r of Soc. Sec. Admin.*, 2012 WL 4512530 (N.D. Tex. Sept. 28, 2012). In *Herd*, a PRT performed by a state agency consultant reported that claimant had mild difficulties in maintaining concentration, persistence, and pace. *Id.* In comparison, the MRFC assessment, conducted by the same consultant as the PRT, found that the claimant had moderate limitations in maintaining attention and concentration for extended periods, and moderate limitations to perform at a consistent pace. *Id.* The ALJ gave "significant weight" to the PRT review and "some weight" to the MRFC assessment. *Id.* (internal quotations omitted). The Court found that the ALJ's reliance on the state agency consultants with "inconsistent assessments created ambiguities," which rendered the "ALJ's MRFC conclusions unsupported by substantial evidence." *Id.*

Here, the ALJ adopted limitations provided by the state agency consultants MRFC assessments—that Plaintiff could perform detailed, but not complex tasks. *See* Tr. at 23. The ALJ did not specifically refer to limitations referenced in the state agency consultants PRT analysis, nor was the ALJ required to. *See* Tr. at 27; *Lull*, 535 F. App'x at 686. And because the ALJ did not rely on the opinions of the PRT, the ALJ was not required to explain any inconsistencies between the administrative level PRTs and the MRFCs. *See Herd*, 2012 WL 4512494, at *11. Thus, the undersigned finds that the ALJ did not commit legal error, and the inconsistency between the state agency consultants PRT and MRFC did not create an inconsistency that demonstrates that the ALJ's decision was not supported by substantial evidence.

  2. *The state agency consultants considered the opinion of Flanagan.*

Plaintiff argues that "the ALJ's reliance on the state agency medical findings is legally flawed because the state agency experts did not review all the evidence available to them." Dkt. No. 13 at 4. Plaintiff alleges that the state agency consultants ignored the consultative examination of Dr. Flanagan. *Id.* Dr. Flanagan consultative examination was allegedly ignored by the state agency consultants because the initial disability determination stated there was "no indication that there is a medical opinion from any medical source" under the "evaluating medical opinions" portion of the "assessment of policy issues." *See id.* at 4–5 (citing Tr. at 64).

The Commissioner responds by asserting that both consultative examiners "noted that the consultative examination was kept" because their disability determinations reference Flanagan's report from her consultative examination. Dkt. No. 16 at 12 (citing

Tr. at 55, 60–62, 78, 84, 86). And the Commissioner argues that the ALJ was only required to address the supportability and consistency of Flanagan's report, which the ALJ properly did. *Id.* at 12–14.

In her Reply, Plaintiff clarifies her argument, stating that she "does not argue that the state agency experts were unaware of the consultative examiner's report." Dkt. No. 17 at 3. Instead, Plaintiff alleges that the state agency experts did not properly consider Flanagan's report because their disability determinations noted that there was "'no indication that there is a medical opinion from any medical source.'" *Id.* (citing Tr. at 55–56, 71, 78). And Plaintiff argues that the state agency experts' failure to note that Flanagan rendered a medical opinion makes "it impossible to know on this record how Dr. Flanagan's opinion might have impacted the state agency experts' findings and, ultimately, how their findings would have impacted the ALJ's consideration of the state agency limitations." *Id.* at 4. Thus, Plaintiff appears to claim, without any reference to supporting legal authority, that remand is required because the state agency experts failed to note that Flanagan rendered a medical opinion. *See id.* at 3–4.

Plaintiff's argument that the ALJ committed legal error is without merit. The Court reviews the Commissioner's disability determinations for substantial evidence and legal error. *See Copeland*, 771 F.3d at 923. Here, the ALJ applied the proper legal standards by addressing the supportability and consistency of Dr. Flanagan's opinion, which Plaintiff does not appear to dispute. *See* Tr. at 27; *See Webster v. Kijakazi*, 19 F.4th 715, 719 (5th Cir. 2021).

The ALJ explained how Flanagan's opinion was "supported by citations to objective medical findings" but noted "testing showing generally normal intellectual and memory functioning is not consistent with a restriction of no more than one or two step tasks." Tr. at 27. Accordingly, the undersigned rejects Plaintiff's unsupported argument that remand was required because the state agency consultants failed to classify Flanagan's consultative exam as a medical opinion in their disability determinations.

B. The ALJ's RFC is supported by substantial evidence.

Plaintiff argues that the ALJ's RFC is erroneous because: (1) her severe impairments of major depressive disorder and PTSD limit her to simple work; and (2) the ALJ's RFC failed to include limitations for mild impairments; and (3) the evidence that the ALJ relied upon does not support a finding that Plaintiff can perform her past work. Dkt. No. 13 at 6–11.

1. *The ALJ properly considered Plaintiff's severe mental impairments in determining the RFC.*

Plaintiff alleges that the ALJ's RFC failed to adequately account for her severe impairments of major depressive disorder and PTSD. *Id.* at 6. Plaintiff argues that a severe impairment limits a claimant's ability to perform the basic "work activities required for unskilled work." *Id.* Plaintiff asserts that "[b]y definition, that means that [her] . . . mental ability to perform even the minimal demands of unskilled work was compromised." *Id.* at 7. Accordingly, Plaintiff believes that "the ALJ should have limited her to unskilled work and explained to what extent [her] . . . ability to perform unskilled work was limited by her severe impairments." *Id.* at 7.

To support her argument, Plaintiff notes that despite the ALJ's finding of severe limitations, "the only mental limitation" provided by the ALJ was that she "could perform detailed but not complex tasks." *Id.* Plaintiff argues that given her limitations, she should have been limited to unskilled work. *Id.* Thus, the RFC is erroneous because the ALJ limited her to "detailed but not complex tasks" and the "ability to perform detailed tasks is actually . . . the ability to perform semi-skilled, not unskilled work." *Id.* at 7.

The Commissioner responds by arguing that "limitations identified in the paragraph B criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." Dkt. No. 16 at 14 (internal quotations omitted). And the Commissioner argues that "[o]nce the ALJ proceeds past step two . . . the labeling of an impairment as 'severe' or 'non-severe' has no legal significance." *Id.* at 14–15. In her Reply, Plaintiff alleges, without further explanation, that the "ALJ made no real attempt to explain how [Plaintiff] . . . was capable of performing this work." Dkt. No. 17 at 5.

Plaintiff's argument, that the ALJ was required to limit Plaintiff to simple work after finding that Plaintiff had a severe mental impairment, is without merit. Plaintiff provides no legal authority, and the Court is unaware of any, that requires a claimant to be limited to unskilled work if the ALJ determines that the claimant suffers from a severe impairment at steps 2 and 3 of the sequential evaluation process.

The purpose of an RFC is to determine the most an individual can do despite their limitations. SSR 96-8P, 1996 WL 374184, at *1 (1996). To determine an individual's RFC, an ALJ will consider all evidence, and then determine what evidence is consistent, and if

12

that evidence is sufficient to determine disability. 20 C.F.R. § 404.1520b(a) (2017). The ALJ will also determine what evidence is incomplete or inconsistent and how to best evaluate and manage that evidence or whether to use that evidence at all. *Id.* at (b)–(c). An RFC must be based on all relevant evidence and consistent with both objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529, 416.920c (2017).

Here, as discussed above, the ALJ found that the state agency experts' determinations that Plaintiff could perform detailed but not complex tasks was partially persuasive because they were consistent with the medical evidence of record. Tr. at 27. Additionally, the ALJ addressed the opinion of Dr. Flanagan, and rejected the restriction that Plaintiff should be restricted to one or two step tasks. Tr. at 27. The ALJ explained that "testing showing generally normal intellectual and memory functioning is not consistent with a restriction of no more than one or two step tasks." Tr. at 27. Thus, the ALJ's RFC limiting plaintiff to detailed but not complex tasks, was supported by substantial evidence.

Plaintiff's argument amounts only to a disagreement with the ALJ's RFC assessment that Plaintiff could perform detailed tasks and an attempt to have the Court reevaluate this finding. *See* Dkt. Nos. 13, 17. However, this Court may not "re-weigh the evidence, try the questions de novo, or substitute [its] judgment for the Commissioner's." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

2. *The ALJ properly evaluated Plaintiff's mild limitations.*

Plaintiff argues that the ALJ erred in her RFC determination because "there is still absolutely no discussion in the decision about [Plaintiff's] . . . mild limitations in understanding, remembering, or applying information; interacting with others; and

adapting or managing herself." Dkt. No. 13 at 8. Plaintiff argues that the ALJ was required to account for these limitations in the RFC finding. *Id.* at 9. Plaintiff claims that this error was harmful because it resulted in the Plaintiff being found capable of performing her past employment. *Id.* at 10.

The Commissioner responds by arguing that the ALJ's opinion accounted for those limitations but made no further restrictions to Plaintiff's RFC finding because any further restrictions were not supported by the record. Dkt. No. 16 at 15–18.

The Social Security Administration regulations, which are controlling and relevant authority, require an ALJ to determine the severity of a mental impairment by "assess[ing] an individual's limitation and restrictions from a mental impairment(s) in categories identified in 'paragraph B' and 'paragraph C' criteria," and then conduct "a more detailed assessment" at the mental RFC used at steps 4 and 5. *Pamela Joyce B. v. Kijakazi*, No. 1:21-CV-00087-H-BU, 2022 WL 3161941, at *6 (N.D. Tex. July 21, 2022), *report and rec. adopted sub nom. Pamela B. v. Kijakazi*, 2022 WL 3159273 (N.D. Tex. Aug. 8, 2022) (citing SSR 96-8p, 1996 WL 374184, at *4). And "[t]he ALJ is not required to include RFC limitations or discussion for mental functional limitations found to be none or mild at step two and step three of the evaluation process." *Id.* (quoting 20 C.F.R. § 404.1520a(d)(3) ("If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe . . . " and once a severe impairment is found, then the ALJ will then assess the severity of the impairment as part of the RFC.).

Here, at step 2 and 3 of the sequential evaluation process, the ALJ found that Plaintiff suffered from the following mild impairments: (1) understanding, remembering,

or applying information; (2) interacting with others; and (3) adapting or managing oneself. Tr. at 22. Then, contrary to Plaintiff's arguments, the ALJ analyzed Plaintiff's severe and non-severe impairments in the RFC analysis. Tr. at 23–27. The ALJ conducted a detailed review of Plaintiff's mental health records, testimony, and daily activities and found that the "medical evidence was not fully consistent with the claimant's symptoms and limitations." Tr. at 27. The ALJ explained why, after considering all the evidence in the record, the evidence did not "provide a basis for limitations greater than those determined in the residual functional capacity." Tr. at 27.

The ALJ noted that "cognitive tests showed the claimant cognition was intact and objective memory testing showed normal memory abilities." Tr. at 26. The ALJ states that "[o]ther exams noted findings such as the claimant having a good mood and affect, normal insight and judgment and intact memory." Tr. at 26. The ALJ listed the claimants "wide range of daily activities"[4] and reasoned that "[s]ome of the physical and mental abilities and social interactions required to in order to perform these activities are the same as necessary for obtaining and maintaining employment." Tr. at 26. Accordingly, the ALJ's RFC addressed Plaintiff's ability to understand, remember, and apply information, as well as her ability to interact with others, and her capacity to adapt and manage herself.

---

[4] ALJ noted that Plaintiff's daily activities include caring for her husband and mother, washing dishes, driving, shopping in stores, playing games, socializing, making her bed, ordering items online, and handling her finances. Tr. at 26.

15

3. *The ALJ properly considered evidence in the record to support her finding that Plaintiff could perform past relevant work.*

Plaintiff argues that the ALJ's RFC was erroneous because the RFC "largely rested" on Plaintiff's "ability to engage in daily activities." Dkt. No. 13 at 10. Plaintiff alleges that the ALJ relied upon her ability to perform tasks such as caring for her husband and mother, washing dishes, driving, shopping in stores, playing games, socializing, making her bed, ordering items online, and handling her finances "as the basis for her conclusions that [Plaintiff] . . . was not disabled." *Id.* at 11. Plaintiff claims that the ALJ's reliance on these activities was harmful because the tasks are not similar to the tasks that she would perform in her previous employment as a payroll clerk and receptionist. *Id.* at 10–11. Additionally, Plaintiff claims that the RFC was incorrect because "the ALJ did not even consider [Plaintiff's] . . . testimony that she was fired from her past relevant work . . . because, among other reasons, she could not grasp information." Dkt. No. 13 at 11.

Plaintiff's argument lacks merit. The ALJ did not state that Plaintiff could perform her previous employment solely because of her daily activities. *See* Tr. at 25–27. In fact, the ALJ expressly noted that only "[s]ome of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment." Tr. at 26. And as the undersigned addressed above, the ALJ explained why the medical evidence does not support a finding that Plaintiff is more limited than the given RFC. Tr. at 27. Thus, the ALJ did not improperly rely on Plaintiff's daily activities to find that she could perform the detailed tasks required by her previous employment.

16

Regarding Plaintiff being fired from her previous employment, the ALJ noted that "objective memory testing showed normal memory abilities" and "testing showing generally normal intellectual and memory functioning is not consistent with a restriction of no more than one or two step tasks." Tr. at 27. Thus, unlike Plaintiff claims, the ALJ explained why the Plaintiff has the ability to "grasp information" required for her previous employment. *See* Tr. at 27. Plaintiff fails to provide any support showing legal error and the undersigned finds that the ALJ properly applied the statutes and regulations to determine the Plaintiff's RFC encompasses her functional limitations.

C. <u>The ALJ and the Appeals Council Judges were properly appointed and had authority to adjudicate Plaintiff's claims.</u>

Plaintiff alleges that "the ALJ and Appeals Council members were not properly appointed by former Acting Commissioner Nancy Berryhill nor by any subsequent Commissioner or Acting Commissioner." Dkt. No. 13 at 12. Plaintiff contends that Berryhill began serving as Acting Commissioner on January 20, 2017, and that under the Federal Vacancies Reform Act's (FVRA), which limited her term to 210 days, her term ended on November 16, 2017. *Id.* And Plaintiff argues that Berryhill remained Commissioner until Andrew Saul became Commissioner on June 7, 2019, and that her "actions after that date had no legal validity." *Id.* Plaintiff cites two out of district cases to support her argument and claims that she "offers the exact same arguments . . . as the claimants in those cases." *Id.* at 13 (citing *Brian T. D. v. Kijakazi*, 580 F. Supp. 3d 615 (D. Minn. 2022), *rev'd and remanded sub nom. Dahle v. Kijakazi*, 62 F.4th 424 (8th Cir.

17

2023)); *Richard J. M. v. Kijakazi*, No. 19-CV-827 (KMM), 2022 WL 959914, at *9 (D. Minn. Mar. 30, 2022).

The Commissioner responds by noting that the "FVRA . . . establishes two timelines for acting service." Dkt. No. 16 at 20. The Commissioner explains that the first timeline allows an acting official to serve in the office for no longer than 210 days after the vacancy occurs, and the second timeline allows the officer to serve "once a first or second nomination for the office is submitted to the Senate, from the date of such nomination for the period that the nomination is pending in the Senate." *Id.* (quoting 5 U.S.C. §3346(a)).

The Commissioner notes that Berryhill served as Acting Commissioner until November 16, 2017, when the initial 210-day period of service expired. *Id.* at. 19. Then, on April 17, 2018, Andrew Saul was nominated to serve as Commissioner, and "[u]pon submission of the nomination, Ms. Berryhill resumed her service as Acting Commissioner . . . and served until Mr. Saul was sworn in as Commissioner." *Id.* And the Commissioner states that "Berryhill ratified the appointments of all SSA ALJs and approved them as her own." *Id.* (citing SSR 19-1, 2019 WL 120236). Thus, the Commissioner argues that the FVRA did not prohibit Berryhill from resuming her role as Acting Commissioner after Andrew Saul was nominated in April 2018. *Id.* at 22. Plaintiff did not address this issue, or the Commissioner's arguments in her Reply Brief. *See* Dkt. No. 17.

Plaintiff's argument that Berryhill could not resume her position of Acting Commissioner after Andrew Saul was nominated is without merit. The undersigned notes that the out-of-district authority that Plaintiff relied upon is "no longer good law following the Eighth Circuit's decision" in *Dahle v. Kijakazi. See* 64 F.4th 424, 427–28 (8th Cir.

18

2023). Additionally, Courts in this District have rejected Plaintiff's counsel's argument in other decisions. *Tamara G. v. Comm'r of Soc. Sec. Admin.*, No. 3:22-CV-631-D-BK, 2023 WL 2504912, at *1 (N.D. Tex. Feb. 13, 2023) (finding that Berryhill properly ratified Judge's appointments after Saul was nominated as Commissioner and "had the requisite authority to serve as Acting Commissioner under the FRVA until Saul was subsequently confirmed"), *report and rec. adopted*, 2023 WL 2518840 (N.D. Tex. Mar. 14, 2023).

Accordingly, the undersigned finds that the ALJ and the Appeals Council Judges were properly appointed and had authority to adjudicate Plaintiff's claims.

## IV. RECOMMENDATION

For the reasons explained above, the undersigned RECOMMENDS that the decision of the ALJ be AFFIRMED.

## V. RIGHT TO OBJECT

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific or sufficient. Failure to file written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the

magistrate judge that are accepted or adopted by the district court, except on grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

    ORDERED this 2nd day of August, 2023.

                                                 _____
                                                 JOHN R. PARKER
                                                 UNITED STATES MAGISTRATE JUDGE